UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
UNITED STATES OF AMERICA,

        Plaintiff,

  -against-                               MEMORANDUM AND ORDER
                                                   04 CR 651 (S-2) (ILG)
ARTHUR COFFEY, et al.,

        Defendants.
-------------------------------------------------x
GLASSER, United States District Judge:

       The Court has previously dealt with pretrial motions in this case in <u>United States v. Coffey</u>, 361 F. Supp.2d 102 (E.D.N.Y. 2005). Familiarity with the case as described in that order is presumed, and the background is supplemented only as needed. This Memorandum and Order addresses one additional motion filed by the government requesting that an anonymous jury be empaneled and partially sequestered.

## **Motion for an Anonymous and Sequestered Jury**

       The indictment begins with ten introductory paragraphs, the first four of which are ubiquitous in virtually every case in this district with organized crime implications.

       The first paragraph names the organized crime family implicated and describes it as "part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra."" The "family" named here is the Genovese Family.

       Paragraphs 2 and 3 then describe the organizational structure of an organized crime family as consisting of a "boss" and "underboss," a counselor or "consigliere," captains, crews, soldiers or members and associates. Paragraph 4 names Vincent Gigante, a/k/a "Chin," as the boss of the family.

       The indictment in paragraphs 5 and 6 then alleges that Coffey and Daggett were

Genovese Family associates affiliated with different crews. It alleges that Ricci was a captain of a crew.

Paragraph 7 describes four funds that provide health care benefits to members of the International Longshoremen's Association ("ILA") in different regions of the United States.

Paragraph 8 alleges that Coffey and Daggett were trustees of the various funds; that Coffey was president of 3 ILA locals, an ILA International vice-president and an executive member of the South Atlantic and Gulf Coast Regions of the ILA. It alleges that Daggett was president of an ILA Local and secretary-treasurer of the Atlantic Coast District of the ILA and the assistant general organizer for the ILA International.

Paragraph 9 alleges their fiduciary obligations to the funds and paragraph 10 alleges that the defendants earned money for themselves and for members of organized crime by placing organized crime associates in lucrative positions with the ILA, with the funds, with companies dependent upon ILA labor and by awarding contracts to companies that paid organized crime members and associates for services rendered to ILA Funds.

Count One charges Coffey and Daggett with conspiracy to extort money and the right to do business from businesses operating at the piers in the New York City metropolitan area, northern New Jersey and Miami, Florida, and to extort ILA positions, money, wages and employee benefits from ILA members.

Count Two charges Coffey, Daggett and Ricci with conspiring to defraud the funds by depriving them of the honest services of their officers and administrators and to obtain money and property from the funds, using the mails and wire communications

to execute the fraud. The specific objectives of the conspiracy is then described together with the overt acts alleged to have been committed to further its objectives in paragraphs 15 - 18.

The government does not contend that either Coffey or Daggett are dangerous, have ever attempted to interfere with the judicial process or pose a threat to doing so in the future; have ever committed or attempted to commit an act of violence, or have ever intimidated or harassed or threatened to intimidate or harass a witness. The government, in its memorandum in support of this motion, invokes the dangerousness of the Genovese and other organized crime families and several of their more notorious members as warranting the relief it seeks.

## **Discussion**

The law in this Circuit governing the impaneling of an anonymous jury can be put into a nutshell viz., "when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights." United States v. Vario 943 F.2d 236, 239 (2d Cir. 1991), *cert denied*, 502 U.S. 1036 (1992). As has been noted in a very different context, it is one thing to put that law in a nutshell, it is quite another thing to keep it there. See Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638 (1938). The plethora of cases addressing the issue bespeaks the difficultly of keeping it there. The difficulty lies in balancing the competing interests, on the one hand, of protecting the jurors and their families from actual or threatened violence, protecting them from the potential taint of extensive trial-related publicity and sensitivity to the juror's rights of privacy and, on the other hand, the defendants' interests in conducting a meaningful *voir dire*, maintaining the presumption of innocence and their Sixth Amendment rights.

3

United States v. Fortunato, 2002 WL 31946813, 1 (E.D.N.Y. 2002).

District courts have been advised not to empanel an anonymous jury without concluding that there is a strong reason to believe that the jury needs protection and the decision whether or not there is such a strong reason rests with the court's discretion. See United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991). In the vast majority of cases in which the court found a strong reason for jury anonymity, the defendant had a history of violence, of obstructing or attempting to obstruct justice, of jury tampering or witness harassment. See, e.g., United States v. Tutino, 813 F.2d 1125 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990); United States v. Persico, 832 F.2d 705 (2d Cir. 1987), *cert. denied*, 486 U.S. 1122 (1988); United States v. Thomas, 757 F.2d 1359 (2d Cir.1985), *cert. denied*, 474 U.S. 819 (1985). In United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994), the Court reflected that view when it wrote that "Anonymity may be warranted when the jury needs protection, as when the government has demonstrated a defendant's willingness to tamper with the judicial process." (emphasis added).

I am mindful of what is perhaps the most oft-cited case in this regard, United States v. Vario, 943 F.2d 236 (2d Cir. 1991), *cert. denied*, 502 U.S. 1036 (1992), in which that Court wrote at 240:

> The invocation of the words 'organized crime,' 'mob,' or 'Mafia,' unless there is something more, does not warrant an anonymous jury. This 'something more' can be a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendants and his associates such as would cause a juror to reasonably fear for his own safety. Such proof would be sufficient in and of itself in an appropriate case to warrant an anonymous jury regardless of whether the defendant was a reputed mobster or associated with a recognized organized

4

crime family.

That observation was immediately followed by:

> To be sure, the specter of organized crime has played into our previous decisions to uphold the use of anonymous juries, but in these decisions, it was the reasonable likelihood of juror intimidation, not the incantation of the words 'the mob' or 'organized crime,' that prompted the anonymous jury.

As has already been noted, the government does not allege that any of these defendants have committed or attempted to commit any crime which can reasonably be said to augur a concern for the integrity of the judicial process. Reliance upon a defendant's organized crime connection is not enough to warrant an anonymous jury. The Court must find that "this connection has some direct relevance to the question of juror fears or safety in the trial at hand, beyond the innuendo that this connection conjures up." Id. at 241.

United States v. Mansoori, 304 F.3d 635 (7th Cir. 2002) is instructive. There, five defendants were convicted of drug offenses, of engaging in monetary transactions involving funds derived from criminal activity and of money laundering. Among the errors they assert on appeal was the empaneling of an anonymous jury. In addressing that issue, the Court extensively cites the significant cases in this Circuit and lists the factors which bear on the determination of the issue as being: the <u>defendant's</u> involvement in organized crime; <u>his</u> participation in a group with the capacity to harm jurors; whether <u>he</u> previously has attempted to interfere with the judicial process; the severity of the punishment the defendant would face if convicted; and whether publicity regarding this case presents the prospect that the jurors' names could become public and

5

expose them to intimidation or harassment. Id. at 650-51 (internal citations omitted) (emphasis added).

In deciding that an anonymous jury was not warranted, the Court wrote:

> Although the case did involve elements of organized crime, 'something more' than the organized crime label is required in order to justify juror anonymity
>
> * * *
>
> In this case, the district court made no finding that the <u>defendants</u> had a history of intimidating witnesses or otherwise obstructing justice or that <u>they</u> were likely to do so in connection with this trial . . . . True, the defendants may have had the ability to intimidate jurors through associates who were not incarcerated, but that is true of many defendants. What demonstrates the need for jury protection is not simply the means of intimidation, but some evidence indicating that intimidation is likely. No such evidence is present here. Nor is there evidence that the defendants had engaged in a pattern of violence unusual enough to cause jurors to fear for their safety.

Id. at 240-41 (emphasis added).

Those observations are peculiarly apposite here.

The government has also advanced its beliefs that this case will spawn extensive publicity as an additional reason warranting an anonymous jury. Attached to its memorandum of law as Exhibit A, are newspaper reports of the indictment and descriptions of some of the defendants. Those reports are not extensive in amount, most being more than a year old and several are from papers in New Jersey, Miami, Florida and Galveston, Texas. The accuracy of the government's prediction of extensive publicity of the trial remains to be seen.

Courts faced with the question of whether an anonymous jury is or is not warranted in any given case "face the prospect of being 'whipsawed' by assertions of error

6

no matter which way they rule." Wheat v. United States, 486 U.S. 153, 161 (1988). That observation, made in another context can appropriately be made here.

In weighing the relevant factors and balancing the competing interests, the Court is moved to conclude that the balance tips in favor of the defendants and the government's motion for an anonymous jury is denied with the following caveats: (1) questioning will be precluded as to jurors' exact addresses or places of employment, and (2) should it become apparent to the Court during voir dire that jurors are reluctant to serve for fear of their own safety, or should media attention increase to a level that could compromise the jury's integrity, it may reevaluate the motion.

The government has also requested that the jury be partially sequestered during the trial. Given the estimate of the parties that this trial may extend over a period of many more than 4 weeks, the hardship such extended jury service will entail may be ameliorated by an Order directing that the jurors be provided with lunch and remain in the courthouse until the end of each court day and that the Marshal make appropriate arrangements for the transportation of jurors from the courthouse at the end of each day. See, e.g., United States v. Coonan, 664 F. Supp. 861 (S.D.N.Y. 1987).

SO ORDERED.

Dated:       Brooklyn, New York
               September 15, 2005

                                   S/ _____
                                        I. Leo Glasser